**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

RONNELL FELTON,                  )
                                 )
              Plaintiff,          )
       v.                         )          Case No. 4:23-cv-01427-SEP
                                 )
AUTOZONE, INC., et al,           )
                                 )
              Defendants.         )

**MEMORANDUM AND ORDER**

Before the Court is Defendants' Motion for Summary Judgment, Doc. [25].  For the reasons set forth below, the motion is granted.

**FACTS AND BACKGROUND**[1]

Plaintiff Ronnell Felton worked as an Assistant Store Manager for Defendant AutoZone between January 28, 2022, through September 8, 2022.  Docs. [27] ¶ 2; [27-1] at 93; [28-5] at 1.  Plaintiff was hired after AutoZone Regional Manager, Jason Overturf, and AutoZone District Manager, Derrick Manuel, observed Plaintiff working at the Dollar General Store and recruited him to a position at AutoZone.  Doc. [27] ¶ 2.

Store 241, at which Plaintiff worked with Defendant Tiara Robinson, has a commercial department and a retail "DIY" department.  *Id*. ¶ 3.  Robinson worked as the Commercial Sales Manager, and Plaintiff, as Assistant Store Manager, was her supervisor.  *Id*. ¶¶ 3-4.  Plaintiff reported to Store Manager James Beard, who was responsible for both departments.  *Id*. ¶ 5.

Plaintiff received the AutoZone employee handbook when his employment began, and he testified that he understood and was familiar with all company policies because his job duties required that he enforce the same.  *Id*. ¶¶ 9-10.  Plaintiff knew, then, that the AutoZone handbook outlined the circumstances that could result in employer-mandated drug testing.  *Id*. ¶ 12. AutoZone's drug testing policy provides that when an employee suffers a "work-related injury" requiring medical attention, and "management determines that drug or alcohol use could have reasonably caused or contributed" to the same, the employee must "immediately or as soon as practicable" submit to a drug test.  *Id*.  The handbook includes examples of hypothetical

---

[1]  Unless otherwise noted, the facts in this section are not disputed.

situations involving workplace injuries requiring medical attention, with the purpose of "help[ing] AutoZoners and AutoZone management determine when an AutoZoner must submit to drug and alcohol testing." Doc. [28-2] at 7.

One such example involves an incident where an employee is stung by a bee and has an allergic reaction requiring medical care, and the handbook indicates that drug testing would not be required because the injury was not related to or caused by the employee conducting AutoZone business. *Id*. Another example is of an employee falling off a ladder at work and sustaining a head injury, and the handbook explains that such an injury is both work-related and of the sort that could have been caused by drug use and would therefore require the employee "to submit to testing." *Id*. Yet another example involves two employees doing inventory when one drops a "hard part" on the other's foot requiring medical care, and the handbook explains that both employees would be required to submit to drug testing in a similar situation. *Id*.

During July of 2022, Plaintiff got into a disagreement with Robinson at work. *Id*. ¶ 13. While Plaintiff was talking to a new employee, Robinson told the new hire that he did not have to listen to Plaintiff. *Id*. ¶ 14. Plaintiff testified that her statement made him feel disrespected, and he reacted in anger by slapping the counter. *Id*. ¶¶ 14-15. Plaintiff testified that after he slapped the counter, Robinson referred to a firearm and said that she was not scared of him, after which he left the store. Doc. [27] ¶ 14.

Human Resources investigated the incident, and Plaintiff was interviewed by Todd Smith, the AutoZone Regional Human Resources Manager on August 9, 2022. Doc. [27] ¶¶ 17-18. In that interview, Plaintiff said that he had slapped the counter and told Robinson to stay out of his business, and she had responded that she was not scared of him and "put her hand in her pocket on her gun and told me not to slap the counter on her." Docs. [27] ¶¶ 21-23; [38-1] at 17. When Smith asked Felton whether he actually saw a firearm, Felton admitted that he never saw a gun and did not know whether she had a gun on her person at the time.[2] Docs. [27] ¶ 23; [38-1] at 17-18. When Smith interviewed the other individuals present during the incident, they each

---

[2] Plaintiff, in his response to Defendants' Statement of Undisputed Material Facts, denies this fact, citing to his deposition at 249:13-250:16. But he does not provide the Court with a copy of that portion of the deposition, and it is not otherwise in the record. Plaintiff also cites to the transcript of his interview with Smith during the HR investigation. That is in the record, but it does not controvert the statement, as Plaintiff clearly states during the interview that he never saw a firearm. *See* Docs. [28]; [28-1]. Therefore, Plaintiff has not properly controverted this fact pursuant to Federal Rule of Civil Procedure 56(c)(1), and the Court deems it admitted. *See* Fed. R. Civ. P. 56(e); E.D. Mo. L.R. 4.01(E).

indicated they had not seen a firearm and had no awareness of Robinson ever bringing a gun to work.  Doc. [38-1] at 22, 26, 30, 34.  Felton never reported to Smith or anyone else at AutoZone that Robinson threatened to harm him,[3] and he did not file a police report regarding the incident. Doc. [27] ¶¶ 24-25.  After interviewing everyone with relevant knowledge, HR concluded that none of Felton's allegations concerning Robinson could be substantiated.  Doc. [38-1] at 12.  At his deposition, Plaintiff testified that the information he gave Smith during the investigation was "completely truthful" and he stands by all the statements he made to Smith.  *Id.* ¶¶ 19-20.  After the investigation, Felton "had no problem returning to work at Store 241" and continued to work with Robinson without further incident.  Doc. [27] ¶¶ 37, 39.

On August 17, 2022, Plaintiff filed a Charge of Discrimination with the Missouri Human Rights Commission in which he alleged sex discrimination and complained about having to work with "unruly female employees."  *Id.* ¶ 55.  The Commission notified AutoZone of the Charge on September 12, 2022.  *Id.*

Meanwhile, on August 27, 2022, Plaintiff was injured at work while using a knife to open a package of floor mats.  *Id.* ¶ 40.  He cut two of his fingers and required medical care in the form of stitches.  *Id.*  Pursuant to AutoZone policy, Plaintiff was ordered to submit to a drug test, but he refused to do so.  *Id.* ¶¶ 12, 42-43.  After Plaintiff refused the drug test, HR opened an investigation into the incident.  *Id.* ¶ 44.  Smith from HR again interviewed Plaintiff, asking him why he refused to participate in the required post-accident drug test, and Plaintiff indicated that he felt "targeted" because his manager, Beard, had asked him if he smoked weed right after asking him if he was alright.  *Id.* ¶ 46.  Plaintiff was aware of AutoZone's policy that employees who refused to submit to the required drug testing would be terminated.  *Id.* ¶ 47.

After completing his investigation, Smith recommended that Plaintiff be terminated.  *Id.* ¶ 49.  Upon considering Smith's recommendation, Regional Manager Overturf made the decision to fire Plaintiff for refusing to comply with company policy.[4]  *Id.* ¶ 51.  Plaintiff was terminated

---

[3] Plaintiff, in his response to Defendants' Statement of Undisputed Material Facts, denies this fact, citing to his deposition and the transcript of his interview with Smith given during the HR investigation, but the cited portions of the record do not controvert the statement.  Because Plaintiff has not properly controverted this fact pursuant to Federal Rule of Civil Procedure 56(c)(1), the Court deems it admitted. *See* Fed. R. Civ. P. 56(e); E.D. Mo. L.R. 4.01(E).

[4] Plaintiff, in his response to Defendants' Statement of Undisputed Material Facts, denies this fact, citing to his Corrective Action Form, which Plaintiff asserts "lists Derrick Manuel" as the individual who made the termination decision.  *See* Doc. [38] ¶ 51.  The Corrective Action Form does not contain any

on September 8, 2022, which was before the company received notice of Plaintiff's Charge of Discrimination filed with the MHRC. *Id*. ¶¶ 54-55. Overturf did not know about the discrimination complaint when he made the decision to terminate Plaintiff. *Id*. ¶ 56. Plaintiff does not accuse either Smith or Overturf of discrimination and testified he had no problem with the way they treated him. *Id*. ¶¶ 50, 52.

On October 9, 2023, Plaintiff filed suit in state court, asserting claims arising under the Missouri Human Rights Act for sexual harassment and hostile work environment; gender discrimination in terms of employment, including discriminatory transfer; unlawful discharge due to age and gender discrimination; and retaliation. *See* Doc. [1]. Plaintiff also asserted Missouri common law claims against Robinson for intentional infliction of emotional distress and assault. *Id*. Defendants removed the action to this Court on November 8, 2023, on the basis of diversity jurisdiction. *Id*.

Defendants now move for summary judgment on all claims. *See* Doc. [25]. Plaintiff filed an opposition, Doc. [29], in which he does not oppose summary judgment as to his claims for age discrimination, sexual harassment, hostile work environment, discriminatory transfer, and intentional infliction of emotional distress, leaving only his claims against AutoZone for discharge due to gender discrimination and retaliatory discharge, and his assault claim against Robinson. Defendants replied, Doc. [39], and the motion is ripe for ruling.

## LEGAL STANDARD

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

---

information concerning the identity of the decisionmaker; it merely identifies Manuel as the person who performed the administrative task of uploading the Corrective Action Form into AutoZone's system. The cited form does not, therefore, controvert Defendants' sworn evidence that Overturf was the decisionmaker. Because Plaintiff has not properly controverted this fact pursuant to Federal Rule of Civil Procedure 56(c)(1), the Court deems it admitted. *See* Fed. R. Civ. P. 56(e); E.D. Mo. L.R. 4.01(E).

4

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted).  The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322-23.

The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  "'If reasonable minds could differ as to the import of the evidence,' summary judgment is inappropriate." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986)).  But the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252.  Thus, when a defendant moves for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.*  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citing *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff's remaining claims fail as a matter of law.  The Court agrees.

**I.      <u>AutoZone is entitled to summary judgment on Plaintiff's MHRA claims</u>.**

In deciding discrimination and retaliation claims asserted under the MHRA, courts "are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law."  *Smith v. Renal Care Group*, 2020 WL 601611 at *12, (E.D. Mo. Feb. 7, 2020); *see also Lampley v. Mo. Comm'n on Human Rights*, 570 S.W.3d 16, 22 (Mo. 2019) ("When reviewing cases under the [MHRA, courts] are guided by both Missouri law and any federal employment discrimination case law that is consistent with Missouri law.").  The MHRA prohibits employers from discriminating against an employee "because of" that employee's gender.  Mo. Rev. Stat. § 213.055.1(1)(a).  An employer discriminates "because of" gender when the individual's gender was "the motivating factor" in the adverse employment decision, § 213.010(2), and gender is "the motivating factor" when it "actually played a role in . . . and had a determinative influence on" the decision, § 213.010(19).  The MHRA's "motivating factor" standard requires proof that one's gender was more than a mere contributing factor in the adverse employment decision, and it is comparable to the standard applied in federal Title VII claims. *See Bram v. AT&T Mobility Servs., LLC.*, 564 S.W.3d 787, 794-95 (Mo. Ct. App. 2018) ("The [motivating factor] standard is analogous to the one used in employment discrimination claims under federal law[.]").

**A.   Gender Discrimination**

Where, as here, an employer files a summary judgment motion in an MHRA case based on indirect evidence of discrimination, Missouri courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See* Mo. Rev. Stat. § 213.101.3; *see also Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014).  Under that framework, Plaintiff must first establish a prima facie case of discrimination by demonstrating:  "(1) he was a member of a protected class; (2) he was qualified to perform his job; (3) he suffered an adverse employment action; and (4) he was treated differently than similarly situated [female] employees."  *Cafiero v. Keurig Dr Pepper Inc.*, 2021 WL 5630373, at *2 (E.D. Mo. Dec. 1, 2021) (quoting *West v. Minact, Inc.*, 2021 WL 4497853, at *5 (W.D. Mo. Sept. 30, 2021)).

6

Once an employee makes his *prima facie* showing, the burden shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its action." *Fiero*, 759 F.3d at 878. The defendant "need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

If Defendant makes that showing, then the burden shifts again and Plaintiff "must show that the proffered nondiscriminatory reason is merely a pretext for unlawful . . . discrimination." *Fiero,* 759 F.3d at 878 (citing *Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)). The burden of proving discrimination remains on the plaintiff at all times. *St. Mary's Honor Ctr.*, 509 U.S. at 515-16. It is not enough to merely discredit the defendant's articulated reason for the adverse employment action. A plaintiff "must always establish that the real reason for a defendant's action was impermissible discrimination." *Id.*; *see also Huston v. McDonnell Douglas Corp*., 63 F.3d 771, 777 (8th Cir. 1995). So, to avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory animus was a motivating factor in the adverse employment decision. *See* Mo. Rev. Stat. § 213.010.2.

AutoZone argues that Plaintiff has not made out a prima facie case of discriminatory discharge, as he provides no evidence that he was treated differently from a similarly situated individual outside his protected class or that Smith or Overturf acted with discriminatory intent when they decided to discipline him. *See* Doc. [26] at 8. Plaintiff does not address that argument in his opposition, and the Court need not address it either. Even if Plaintiff has established a prima facie case of discriminatory discharge, AutoZone has shown a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff has not shown that the proffered reason is mere pretext for intentional gender discrimination.

AutoZone asserts that Plaintiff was terminated because he failed to follow company policy when he refused to undergo drug testing after suffering a work-related injury that required medical attention. Doc. [28] at 8. Courts in the Eighth Circuit have repeatedly held that violation of company policy is a legitimate, non-discriminatory rationale for terminating an employee. *See Ebersole v. Novo Nordisk, Inc.,* 758 F.3d 917, (8th Cir. 2011) (summary judgment affirmed where employee was terminated for violating company policy by falsifying

7

information about client visits); *Matthews v. Bank of America*, 2011 WL 6884795 (8th Cir. 2011) (affirming summary judgment where employee was terminated for failure to provide medical documentation as required by company policy); *Norman v. Union Pacific R.R. Co.,* 606 F.3d 455, 460 (8th Cir. 2010) (affirming summary judgment where employee was terminated for violating company policy requiring submission of a return to work release).

Plaintiff asserts that the reason proffered for his termination is pretextual—that he was actually discharged because of his gender. Doc. [29] at 4. To demonstrate pretext, an employee must show that the employer's proffered reason is "unworthy of credence." *Hite v. Vermeer Mfg. Co.,* 446 F.3d 858, 867 (8th Cir. 2006). An employee "may demonstrate pretext in multiple ways, including (1) by demonstrating that the employer's proffered reason has no basis in fact; (2) that similarly situated employees were treated more leniently; (3) that the employer changed its explanation for why it fired the employee; and (4) that the employer deviated from its policies." *Phillips v. Mathews*, 547 F.3d 905, 913 (8th Cir. 2008).

According to AutoZone, Plaintiff has no evidence that the stated nondiscriminatory reason for Plaintiff's termination was pretextual. Doc. [26] at 8. The individual who hired Plaintiff, Overturf, was the same person who decided to fire him just months later. *Id.*; Doc. [27] ¶¶1, 8, 44-48, 51-53. Because Overturf knew Plaintiff's gender when he recruited him and yet fired him later that same year, AutoZone argues, it stands to reason that Plaintiff's gender played no role in the decision to terminate.

AutoZone is correct that, because Overturf both hired and fired Felton, "an inference arises that his decision was not motivated by discriminatory animus." *Owens v. U.S. Dept. of Army*, 312 Fed. Appx. 831, 835 (8th Cir. 2009) (citing *Peterson v. Scott Cnty.,* 406 F.3d 515, 522 (8th Cir. 2005) ("This court has previously observed that it is not likely that a supervisor would hire an older woman and then discriminate against her on the basis of her age and gender.") (abrogated in part for unrelated reasons by *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)); *see also Herr v. Airborne Freight Corp.,* 130 F.3d 359, 362–63 (8th Cir.1997) ("There is a *strong* inference that discrimination was not a motivating factor if the same person hired and fired the plaintiff within a relatively short period of time.") (emphasis added) (citing *Rothmeier v. Inv. Advisers, Inc.,* 85 F.3d 1328, 1337 (8th Cir. 1996). Under such circumstances, where the same individual hired Plaintiff and then, approximately nine months later, fired him, an inference arises that Overturf was not motivated by discriminatory animus.

Defendant also points out that Plaintiff's complaints of discrimination relate to treatment by his direct supervisor, James Beard, who did not have the authority to terminate him and who was uninvolved in the disciplinary decision. *See* Doc. [39] at 5 ("While Plaintiff seems to fault James Beard for making him go for a drug test [citing Doc. [29] at 6, 10], it was not Mr. Beard who made this decision."). In his briefing, Plaintiff does focus solely on Beard, asserting that Beard "did not have any legitimate reason to believe that Plaintiff was under the influence of marijuana at the time of his work-related injury," and that "Beard never disciplined" anyone else "for showing up to work under the influence of drugs." Doc. [29] at 6, 10. There are two problems with those claims: First, Plaintiff was not disciplined "for showing up to work under the influence of drugs"; he was disciplined for refusing to follow company policy regarding drug testing. And second, Plaintiff was not disciplined for *any* reason *by Beard*. Beard played no part in the decision to order Plaintiff to get drug testing (that was Smith) or in the decision to terminate him (that was Overturf). Doc. [27] ¶¶ 49-51. Plaintiff offers no evidence that Beard's alleged bias against him influenced Smith or Overturf when they decided to terminate.

Finally, Felton has provided no appropriate comparators for the Court's consideration. "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014). A plaintiff must establish "that he and the employees outside of his protected group were similarly situated in all relevant respects." *Id.* (citation modified). A plaintiff and potential comparators must have "dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* To show disparate treatment, and thus give rise to a factual issue as to whether discrimination was the motivating factor in his termination, Felton would need evidence of a female AutoZone employee who engaged in the same conduct as he, *i.e.*, refusing to comply with an order to undergo drug testing after suffering a work-related injury that required medical treatment, but who received more lenient discipline. Felton produces no such evidence.

Felton suggests that Erica Dodson, a female employee at Store 214, is a relevant comparator. He claims Dodson received more favorable treatment than Felton based on speculation that she came to work while under the influence of drugs and thus should have been ordered to undergo drug testing. *See* Doc. [27] ¶¶ 27-28. Plaintiff testified that he heard Dodson had overdosed at work and was taken away in an ambulance, and he argues that she was treated

more favorably than him because she was allowed to remain employed after the incident.  Doc. [27-1] at 63-65.  But Felton also testified that he was not at work during the alleged overdose, did not know whether Dodson had overdosed, and had no knowledge of whether Dodson refused to take a drug test.  *Id*. at 129:20-22; 130:5-10; 131:24-25.  And Felton acknowledged that he did not know of any other employee who reported a work-related injury, received medical attention, and refused to take a drug test.  *Id*. at 132:1-10.  Additionally, AutoZone is unaware of any incident that would have required Dodson to take a drug test.  Doc. [38] ¶ 96.

There is no evidence of record to support Plaintiff's account of the incident involving Dodson save Plaintiff's testimony and speculative allegations.  *See Dees v. Iron Mountain, Inc.*, 2022 WL 4598539, at *6-7 (E.D. Mo. Sept. 30, 2022) (Plaintiff's "own deposition testimony, together with speculation and legal conclusions" was "not sufficient to generate a genuine dispute of material fact").  But even if the incident involving Dodson happened as Felton alleges, it is not similar enough to Felton's work-related injury and subsequent discharge to be legally relevant.

Felton seriously cut himself while opening packages at work and sought medical care for his work-related injury, which under company policy triggered the drug testing requirement, and he refused testing.  There is no evidence Dodson ever reported suffering a work-related injury or that she sought treatment for a work-related injury, thus triggering AutoZone's policy requiring a drug test.  The AutoZone handbook has no provision requiring that an employee undergo drug testing based on a suspicion that an employee was using drugs; the only event that triggers a drug test is a reported work-related injury requiring medical attention.  *See* Docs. [28-2] at 6-7, [38] ¶ 77 (AutoZone's drug test policy "does not allow an employer to drug test on reasonable suspicion.").  And even if it did, there is no evidence in the record that AutoZone asked Dodson to take a drug test and she refused.  Finally, there is no evidence that Overturf, who imposed the discipline on Plaintiff, had any knowledge of an alleged overdose by Dodson while at work but nonetheless allowed her to remain employed.  Thus, Felton has not met his burden of showing that he and Dodson were "similarly situated in all relevant respects."  *Johnson*, 769 F.3d at 613.

Felton has not presented sufficient evidence such that a reasonable juror could find that AutoZone's stated reason for firing him—refusing to take a drug test after his work-related injury—was mere pretext for discrimination.  Because Plaintiff fails to establish a genuine issue

10

of material fact as to whether his gender was the motivating factor in AutoZone's decision to terminate his employment, AutoZone is entitled to summary judgment on that claim.

### B. Retaliation

AutoZone also claims to be entitled to summary judgment on Plaintiff's claim that he was discharged in retaliation for filing a charge of discrimination with the MHRC. Doc. [26] at 9-10. To establish a prima facie case of retaliation under the MHRA, Plaintiff must prove that (1) he complained of discrimination; (2) AutoZone took adverse action against him; and (3) a causal relationship existed between the complaint and the adverse action. *Holmes v. Kansas City Pub. Sch. Dist.*, 571 S.W.3d 602, 611 (Mo. Ct. App. 2018) (citing *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 48 (Mo. Ct. App. 2016)). The causation standard for a retaliation claim requires the plaintiff to demonstrate that his protected activity was "the motivating factor" for discipline, meaning that his "protected classification actually played a role . . . and had a determinative influence" on the adverse action. Mo. Rev. Stat. § 213.010(2), (19). Like a discrimination claim under the MHRA, if a plaintiff satisfies the *prima facie* case for retaliation, "the defendant then has the burden of showing a legitimate, non-discriminatory reason for the challenged action. If the defendant offers such a reason, the burden shifts back to the plaintiff to show the defendant's proffered reason is a pretext." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015) (citing *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)).

AutoZone argues that Plaintiff fails to establish a prima facie claim for retaliation under the MHRA because he does not establish that his discharge was causally connected to his discrimination complaint. Doc. [26] at 9. The Court agrees. Plaintiff filed his charge of discrimination on August 17, 2022, and he was terminated on September 8, 2022. Plaintiff argues that the temporal proximity between the two events gives rise to so strong an inference of retaliation as to render AutoZone's explanation for his termination "unworthy of credence." Doc. [29] at 14. But temporal proximity alone is not generally enough to establish a causal relationship. *See Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("[A] mere coincidence of timing can rarely be sufficient to establish a submissible case of retaliatory discharge.") (internal quotation marks omitted); *Tatum v. City of Berkeley*, 408 F.3d 543, 555 (8th Cir. 2005) ("It is well-established in this circuit that mere temporal proximity between an employee's protected activity and the employer's adverse employment treatment generally will not suffice to create a genuine issue of fact on a retaliation claim.").

"[T]he fact that an adverse action occurred at some point after Plaintiff complained does not prove a causal relationship between the two occurrences." *Dees v. Iron Mt., Inc.*, 2022 WL 4598539, at *10 (E.D. Mo. Sept. 30, 2022) (citing *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998) ("*Post hoc ergo propter hoc* is not enough to support a finding of retaliation . . . ."); *Wilson v. Clearwater Paper Corp.*, 2024 WL 1835072, at *6-8 (E.D. Ark. Apr. 26, 2024) (employee fired for refusing a post-accident drug test shortly after engaging in protected activity could not demonstrate that his discharge was caused by the protected activity). Mere temporal proximity is particularly insufficient where, as here, the "allegedly retaliatory motive coincides temporally with the non-retaliatory motive":  Plaintiff's refusal to comply with company policy occurred only 10 days after he filed his charge of discrimination. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1001 (8th Cir. 2011) (prima facie retaliation case based on temporal proximity "is undermined" when the non-retaliatory motive for employee discipline occurred during the same time period as the allegedly retaliatory motive).

The timing in this case—around three weeks—is unquestionably close.  But because timing alone is "rarely enough," the facts surrounding the protected activity and adverse employment action are "key," with timing then providing the "final straw if the issue is close." *Schoonover v. Schneider Nat. Carriers, Inc.*, 492 F. Supp. 2d 1103, 1157–58 (S.D. Iowa 2007). Knowledge by the decisionmaker of the protected activity is the paramount fact, because if the decisionmaker was unaware of the protected activity, no reasonable factfinder could decide that a plaintiff's engagement in protected activity was the motivating factor for his discharge, as required by the statute.  *See Hervey v. Cty. of Koochiching*, 527 F.3d 711, 722 (8th Cir. 2008) ("An employee must show that the employer had actual or constructive knowledge of the protected activity in order to establish unlawful retaliation.") (citing *Buettner v. Arch Coal Sales Co., Inc.,* 216 F.3d 707, 715 (8th Cir. 2000)); *see also Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 818 (8th Cir. 1998) ("In order to establish the third element of his prima facie case of retaliation, Thomas needed to present evidence that Riceland knew that he had engaged in statutorily protected activity"); *Wolff v. Berkley, Inc.,* 938 F.2d 100, 103 (8th Cir. 1991) (a causal link "does not exist if the employer is not aware of the employee's statutorily protected activity"); *see also Cole v. May Dep't Stores Co.,* 109 Fed. Appx. 839, 841 (8th Cir. 2004) (no retaliation when plaintiff lacked evidence that any person aware of a pending discrimination charge was involved in the decisions causing the negative employment event).

12

Here, Plaintiff admits there is no evidence that Overturf, who made the termination decision, knew about the charge of discrimination when he decided to terminate Plaintiff. Doc. [38] ¶¶ 55-56. Because the decisionmaker had no prior knowledge of Plaintiff's protected activity, Plaintiff's evidence of temporal proximity does not give rise to a fact question on his prima facie case for retaliation. Accordingly, Defendant AutoZone is entitled to summary judgment on his claim of retaliatory discharge.

### C. Assault

Under Missouri law, an assault is an "unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Devitre v. Orthopedic Ctr. of St. Louis, LLC,* 349 S.W.3d 327, 335 (Mo. 2011) (quoting *Phelps v. Bross,* 73 S.W.3d 651, 655 (Mo. Ct. App. 2002)). Assault is sometimes described as "an inchoate battery." *Id.* Assault is an intentional tort, and so a plaintiff must prove: "(1) [the] defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Id.*

In his Complaint, Felton brings one count for assault against Robinson, alleging that she assaulted him at work by "[i]rately shouting" at him while "[b]randishing a handgun in the workplace," and "expressing her intent in firing her handgun at Plaintiff's direction." Doc. [1-1] ¶ 59. While such a scenario could perhaps constitute assault under Missouri law, the evidentiary record at summary judgment does not bear out Plaintiff's allegations. In Plaintiff's Additional Statement of Material Facts, he does not claim that he knew Robinson to be armed on the day in question, that she yelled at him irately, or that she brandished a weapon or threatened to fire a handgun at Plaintiff. He states only that on a separate occasion—not the day of the incident—he had seen a handgun on her person, and that when she bumped into him another time, he believed he felt a gun in her pocket. Doc. [38] ¶¶ 83-84.

Meanwhile, Plaintiff admitted that he did not see a handgun the day of the incident, that he did not know whether Robinson had a gun on her person at that time, and that the only thing Robinson said to him—after he shouted at her and slapped his hand on the counter—was that she was not scared of him. *See* Docs. [27] ¶¶ 21-23; [38] ¶¶ 14-23, [38-1] at 17. He did not report the incident to the police nor tell anyone at AutoZone that he felt threatened. Docs. [27] ¶¶ 24-25; [27-1] at 40. When Smith interviewed the other individuals present during the incident, they

each indicated they did not see a firearm and had no awareness of Robinson ever bringing a gun to work.  Doc. [38-1] at 22, 26, 30, 34.

Felton has not produced sufficient evidence to create a factual dispute as to whether Robinson intended to cause him harm or he had actual apprehension of bodily harm.  Boiled down to its essence, Plaintiff's claim is that he shouted at someone while slapping the counter, and that person responded by saying she was not afraid of him.  A reasonable juror could not infer the requisite intent to harm or actual apprehension of bodily harm from those facts.

Plaintiff's allegations are reminiscent of the facts of *Bloodworth v. Kansas City Board of Police Comm'rs*, 89 F.4th 614, 623 (8th Cir. 2023).  In that case, the plaintiff brought an assault claim against an individual who, in the context of a dispute, stated, "it's on."  *Id*. at 624.  The district court granted summary judgment on the claim because "assault requires a connection to bodily harm or offensive contact," and the plaintiff's allegations did not support an assault claim.  *Id*.  The Eighth Circuit affirmed, holding that the words spoken "did not evidence intent to cause bodily harm or offensive contact . . . or create a fear of imminent peril."  *Id*.  The same is true here, where Robinson said she was not afraid of Plaintiff after he yelled at her.  Because no reasonable juror could find that Robinson assaulted Felton on these facts, Robinson is entitled to summary judgment on this claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.**

A separate Judgment will accompany this Memorandum and Order.


Dated this 17th day of September, 2025.


SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

14